

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

v.  CRIMINAL NO. 3:22-CR-84-CWR-LGI

JON DARRELL SEAWRIGHT  18 U.S.C. § 371

**The United States Attorney charges:**

At all times relevant to this Information Defendant **JON DARRELL SEAWRIGHT** (**"SEAWRIGHT"**) and TED BRENT ALEXANDER ("ALEXANDER") were residents of Jackson, Mississippi. At all times relevant to this Information, ALEXANDER SEAWRIGHT, LLC and ALEXANDER SEAWRIGHT TIMBER FUND I LLC ("ASTF") were Mississippi Limited Liability Companies wholly owned by defendants **SEAWRIGHT** and ALEXANDER.

Beginning at least as early as 2011 and continuing through December 2018, in Hinds County, Mississippi, in the Northern Division of the Southern District of Mississippi, and elsewhere, defendant **JON DARRELL SEAWRIGHT** did knowingly and intentionally conspire with TED BRENT ALEXANDER to commit the following offense:

> To knowingly devise a scheme or artifice or intend to devise a scheme or artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, or promises and, for the purpose of executing the scheme, did transmit or cause to be transmitted by means of wire or radio communications in interstate commerce, any writings, signals or sounds, in violation of Title 18, United States Code, Section 1343.

MANNER AND MEANS OF THE CONSPIRACY

It was part of the agreement and conspiracy that **JON DARRELL SEAWRIGHT** and TED BRENT ALEXANDER, did knowingly and intentionally participate in a scheme and artifice to defraud investors by soliciting millions of dollars of funds under false pretenses and failing to use investors' funds as promised. Co-conspirators **SEAWRIGHT** and ALEXANDER represented to investors that ASTF was in the business of loaning funds to a "timber broker" to

buy timber rights from landowners and then to sell the timber rights to lumber mills at a higher price. **SEAWRIGHT** and ALEXANDER promised ASTF investors a return of 10% or more over twelve or thirteen months on each unit of invested capital.

In furtherance of the conspiracy and the scheme and artifice to defraud, **SEAWRIGHT** and ALEXANDER solicited investors through verbal representations and written representations, including documents titled "Equity Term Sheet" which outlined the details of each series of the investment. **SEAWRIGHT** and ALEXANDER typically concluded investment contracts with investors in the form of Subscription Agreements between the investors and the co-conspirators. The Equity Term Sheets falsely and fraudulently promised and warranted to all investors that **SEAWRIGHT** and ALEXANDER would inspect the property related to the timber rights being invested. In furtherance of the scheme and artifice to defraud, **SEAWRIGHT** and ALEXANDER represented to investors that **SEAWRIGHT** and ALEXANDER had confidence in the timber deeds, as well as the associated contracts with lumber mills for the timber. **SEAWRIGHT** and ALEXANDER represented to their investors and led their investors to believe that **SEAWRIGHT** and ALEXANDER were inspecting each tract of land and were vetting each document, deed, and contract in support of their investments. These promises and representations were material in that they were intended to cause investors to believe that their investments with ASTF were secured by valid assets and to believe that the financial incentives and interests of **SEAWRIGHT** and ALEXANDER aligned with those of the investors.

In fact, **SEAWRIGHT** and ALEXANDER failed to inspect each property related to the timber rights underlying each investment, and they failed to verify each executed lumber mill agreement related to each investment. **SEAWRIGHT** and ALEXANDER made few or no such inquiries, and if **SEAWRIGHT** and ALEXANDER had made such inquiries, they would have

discovered that the timber deeds, lumber mill agreements, and related documents were not valid.

It was further part of the scheme and artifice to defraud that defendant **SEAWRIGHT** and ALEXANDER represented to their investors that **SEAWRIGHT** and ALEXANDER would only profit from each series of the investment if it performed as promised to the investors. This gave the ASTF investors the misleading impression that their interests were fully aligned with those of **SEAWRIGHT** and ALEXANDER. In fact, in addition to receiving a predetermined percentage of return on the investors' funds, **SEAWRIGHT** and ALEXANDER also received undisclosed payments of approximately 3% for recruiting investments to the timber investment scheme immediately upon transferring the investment funds to the purported timber broker. **SEAWRIGHT** and ALEXANDER did not disclose to the ASTF investors: (a) the fact of these payments, or (b) the amount of the payments in relation to the investments made, or (c) the timing of the undisclosed payments to **SEAWRIGHT** and ALEXANDER before any repayment was made to the investors.

It was further part of the scheme and artifice to defraud that **SEAWRIGHT** and ALEXANDER lulled and persuaded investors to maintain their investments and to invest additional funds by asserting that **SEAWRIGHT** and ALEXANDER themselves had personal funds invested in ASTF units, when in fact **SEAWRIGHT** and ALEXANDER rarely, if ever, invested their personal funds in a full ASTF unit.

It was part of the scheme and artifice to defraud that **SEAWRIGHT** and ALEXANDER knew and intended that the false and fraudulent pretenses, representations, and promises would induce investors to entrust money to them, resulting in investors suffering undue risk and substantial loss, while **SEAWRIGHT** and ALEXANDER benefitted from the fraudulent scheme, as **SEAWRIGHT** and ALEXANDER received undisclosed, up-front payments, and typically invested little or no personal funds, through ASTF, into the scheme.

3

## OVERT ACTS

In furtherance of the conspiracy, and to effect the objects thereof, the following overt acts, among others, were committed in the Southern District of Mississippi and elsewhere. On or about the dates listed below, in Hinds County and in Madison County, in the Northern Division of the Southern District of Mississippi, and elsewhere, for the purpose of executing the aforesaid scheme and artifice to defraud and in furtherance of the conspiracy, defendant **JON DARRELL SEAWRIGHT** and TED BRENT ALEXANDER, did knowingly transmit and cause to be transmitted, in interstate and foreign commerce, by means of wire communications, certain writings, signals, pictures and sounds, as more particularly described as follows:

| DATE | WIRE COMMUNICATION |
| --- | --- |
| January 10, 2018 | Interstate wire transfer of funds in the amount of $590,000 from the Federal Reserve Bank in Atlanta, Georgia, on behalf of the First Commercial Bank, in clearance and payment of a check issued by ASTF, to Southern Bancorp in Jackson, Mississippi. |
| January 16, 2018 | Interstate wire transfer of funds in the amount of $17,700 from the Federal Reserve Bank in Atlanta, Georgia, on behalf of the First National Bank of Clarksdale, Mississippi in clearance and payment of a check issued payable to the account of ALEXANDER SEAWRIGHT LLC, at First Commercial Bank, in Jackson, Mississippi. |
| February 15, 2018 | Interstate wire transfer of funds in the amount of $825,000 from the Federal Reserve Bank in Atlanta, Georgia, on behalf of the First Commercial Bank, in clearance and payment of a check issued by ASTF, to Southern Bancorp in Jackson, Mississippi. |
| February 15, 2018 | Interstate wire transfer of funds in the amount of $24,600 from the Federal Reserve Bank in Atlanta, Georgia, on behalf of Southern Bancorp in clearance and payment of a check issued payable to the account of ALEXANDER SEAWRIGHT LLC, at First Commercial Bank, in Jackson, Mississippi. |

All in violation of Title 18, United States Code, Section 371.

## NOTICE OF INTENT TO SEEK CRIMINAL FORFEITURE

As a result of committing the offenses as alleged in this Indictment, the defendant shall forfeit to the United States all property involved in or traceable to property involved in the offenses, including but not limited to all proceeds obtained directly or indirectly from the offenses, and all property used to facilitate the offenses. Further, if any property described above, as a result of any act or omission of the defendant: (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the Court; (d) has been substantially diminished in value; or (e) has been commingled with other property, which cannot be divided without difficulty, then it is the intent of the United States to seek a judgment of forfeiture of any other property of the defendant, up to the value of the property described in this notice or any bill of particulars supporting it.

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(b); and Title 28, United States Code, Section 2461.

*Darren J. LaMarca* (signature)
DARREN J. LAMARCA
United States Attorney